IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANNETTA PEACOCK, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:10-CV-00719 |
| | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| ALTERCARE OF CANAL WINCHESTER POST-ACUTE REHABILITATION CENTER, INC. | : | Magistrate Judge Norah McCann King |
| | : | |
| Defendant. | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment. Having now heard oral argument on the motion, and for the reasons set forth herein, the Defendant's Motion is **GRANTED.**

**II. BACKGROUND**

Defendant Altercare of Canal Winchester Post-Acute Rehabilitation Center, Inc. ("Defendant" or "Altercare") employed Plaintiff Annetta Peacock ("Plaintiff" or "Ms. Peacock") from May 2009 until April 19, 2010 as a State Tested Nurse Aide ("STNA"). Plaintiff, who is African-American, claims that she was discriminated against on the basis of her race following an incident that occurred on April 8, 2010 involving the Plaintiff and a male resident.

The details of the incident are disputed, but essentially the male resident became upset at Plaintiff because he was made to wait for an extended and unreasonable period of time before he was assisted with using the bathroom, despite his call light being turned on to indicate he needed assistance. Plaintiff had a verbal exchange with the male resident, and afterward she brought the incident to the attention of her supervisors. Defendant conducted an "investigation" and solicited

statements from several employees who witnessed the incident and Plaintiff's interactions with the male resident. Following this incident, Plaintiff received a three-day suspension. Defendant gave Plaintiff notice of her termination on April 19, 2010, citing her involvement in the April 8, 2010 incident as reported by the employees' statements. None of the other STNAs present during the incident were disciplined or terminated.

Plaintiff further alleges that Defendant regularly racially discriminated against its African-American employees. In particular, she claims that Defendant hired Caucasian replacements for as many as seventeen terminated African-American employees and that Defendant subjected her and other African-American employees to a hostile work environment.

Plaintiff filed suit against Defendant in this Court on August 11, 2010, bringing the following claims: (1) racial discrimination in violation of the Ohio Civil Rights Act, Ohio Rev. Code Ann. § 4112.02(A); (2) unspecified claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; (3) intentional infliction of emotional distress under Ohio common law; and (4-5) wrongful termination in violation of Ohio public policy. Plaintiff requested compensatory damages in excess of $25,000, punitive damages, and attorneys fees and costs.

On February 23, 2011, this Court granted Defendant's Motion to Dismiss, and dismissed claims three (intentional infliction of emotional distress), four ("Wrongful Termination in Violation of Public Policy"), and five ("Public Policy Tort") of Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)6. On May 13, 2011, Defendant filed this motion for summary judgment on Plaintiff's two remaining causes of action for wrongful termination on the basis of racial discrimination under both federal and state statutes. The matter is now fully briefed and ripe for decision.

### III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993).

The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. But the non-moving party "may not rest merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2). *See also Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). Finally, when a party submits an affidavit under Fed. R. Civ. P. 56(e), it must set forth facts that would be admissible at trial to survive summary judgment. *Jones v. Butler Metro. Housing Authority*, 40 F.App'x. 131, 2002 WL 1455329 at *3 (6th Cir. Jul. 2, 2002) (unpublished).

Cases involving state of mind determinations are not necessarily inappropriate for summary judgment. *Burns v. Sofa Express*, Case No. C2-00-01342, 2002 U.S. Dist. LEXIS 23247 at *5 (S.D. Ohio 2002) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th

Cir. 1989)).  Moreover, "in responding to a summary judgment motion, the nonmoving party cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson*, 477 U.S. at 257.  Finally, the Sixth Circuit has held that "[a] court may not consider unsworn statements when ruling on a motion for summary judgment." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991); *see also Little v. BP Exploration & Oil Co.,* 265 F.3d 357, 363 n. 3 (6th Cir. 2001) (properly disregarding a letter from plaintiff's fellow employee  'because it was an unsworn statement.') (citing *Pollock v. Pollock*, 154 F.3d 601, 611 n. 20 (6th Cir. 1998)).

## IV. LAW AND ANALYSIS

### A.  Plaintiff's Claims for Unlawful Termination on the Basis of Race

Ms. Peacock alleges that the Altercare discriminated against her on the basis of race when it terminated her employment, in violation of Title VII and Ohio law.[1]  Altercare denies that it terminated Ms. Peacock for any unlawful reason, and argues that it is entitled to summary judgment on her claims because she has not put forth any direct evidence of discrimination, she cannot establish a prima facie case of disparate treatment, and because there is no genuine issue of material fact disputing that Altercare terminated her for a legitimate business reason.  Fed. R. Civ. P. 56(c).

The Court will analyze Plaintiffs' claims under Title VII and Ohio law together because Ohio courts apply federal case law interpreting Title VII to claims brought under Chapter 4112.

---

[1] Plaintiff originally alleged that Defendant had discriminated against multiple other African American employees, who were also wrongfully terminated based on race.  Complaint, Doc. 2, ¶ 13.  However, Plaintiff provides not even a scintilla of evidence in her summary judgment briefing to the Court supporting a claim of Defendant's systemic discrimination.  Therefore, the Court will not address this part of Plaintiff's original lawsuit, and will analyze only the evidence and arguments pertaining to Plaintiff's own termination.

*See Ohio Civil Rights Comm'n v. David Richard Ingram, D.C., Inc.*, 630 N.E.2d 669, 672 (Ohio 1994); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981).

### B. Prima Facie Case

Title VII makes it illegal for an employer to take adverse action against an employee on the basis of race. 42 U.S.C. § 2000e, *et seq*. Since Plaintiff does not offer any direct evidence of race discrimination on the part of Defendant, her claim must be analyzed under the familiar burden-shifting scheme for proving discriminatory treatment through circumstantial evidence first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To prevail, Plaintiff must first establish a prima facie case of discriminatory treatment. Plaintiff must show: (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) that she was treated differently than similarly-situated employees who were not members of the protected class. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006); *see also McDonnell Douglas*, 411 U.S. at 802. The prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978).

Plaintiff satisfies easily the first three requirements of her prima facie case. Ms. Peacock is an African American; she suffered an adverse employment action at the hands of Altercare when the company suspended and then terminated her, s*ee Nemeth v. Citizens Fin. Group, Inc.,* Case No. 2:08-cv-15326, 2011 U.S. Dist. LEXIS 68122 at \*19 (E.D. Mich. 2011); and Defendant does not dispute her qualifications for the position of STNA. Defendant argues, however, that Plaintiff cannot establish the fourth element for a prima facie case of

discrimination because she has not provided sufficient evidence of similarly-situated, non-protected STNAs receiving disparate treatment at Altercare.

*Disparate Treatment*

In support of the fourth element of her prima facie case, Plaintiff argues that there were two other nurses present and assigned to the same work area as she at the time of the April 8, 2010, incident, and that despite their also being "involved" in the incident, they were not disciplined as harshly as she was, if at all. In her sworn affidavit, Plaintiff contends that the two other nurses stood by and did nothing to assist Plaintiff during the altercation with the male resident, despite being required to assist the resident in that situation. Plaintiff's Exh. A, ¶ 8. Plaintiff, however, was the only nurse involved who was disciplined by Defendant. *Id.* at ¶ 10.

To meet the disparate treatment requirement under the *McDonnell* test, the employees who were supposedly treated more leniently than Ms. Peacock must be members of the non-protected class. *Wright,* 455 F.3d at 707. Plaintiff alleges in her Opposition brief that there is "evidence that Plaintiff, an African American, was treated differently than Caucasian employees regarding the alleged incident." Plaintiff's Opp. p.5. No such evidence, however, was proffered. Nowhere in her briefing does Plaintiff establish that either of the two nurses in question was Caucasian. Plaintiff also fails to establish that the other two nurses were employed as STNAs, as was the Plaintiff.[2] Providing evidence of both of these facts is critical for Plaintiff to establish the disparate treatment prong of the prima facie case.

---

[2] In fact, Defendants have submitted evidence, in the form of Ms. Peacock's own statement that seems to suggest that the two nurses she is referring to are *not* STNAs, but rather hold some other title. In her statement dated April 8, 2010, Ms. Peacock lists the two nurses who are also allegedly also tasked with answering residents' call lights (Sherry Brunney and Georgette Lodwick). Next to both of their names is the suffix "LPM" which seems to be referring to their job title–one distinct from an STNA.

To prove the fourth element of their prima facie case, the comparative employees offered by Plaintiffs must be similarly-situated in all relevant respects. *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). This means "to qualify as 'similarly-situated' in the disciplinary context, the plaintiff and the colleagues to whom [s]he seeks to compare [herself] 'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct' *Id.*; *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Of course, "'precise equivalence in culpability between employees' is not required,'" *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 659 (6th Cir.1999) (citation omitted), but the employees must "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d at 583.

Plaintiff's failure to provide any evidence of the races of the nurses who allegedly received better treatment, or to provide affirmative evidence establishing their status as similarly-situated employees, is a fatal oversight. For, while at summary judgment "all justifiable inferences are to be drawn in favor of the non-movant, and the non-movant's evidence is to be believed," it is the plaintiff's burden to establish a prima facie case. *See Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007) ("the plaintiff must first submit evidence from which a reasonable jury could conclude that a prima facie case of discrimination has been established.").

In the absence of any evidence from Plaintiff suggesting that the other nurses present at the incident were non-white, or that they were sufficiently similarly-situated STNAs, no reasonable jury could find that Plaintiff has satisfied the disparate treatment requirement of her prima facie case. *See Anderson*, 477 U.S. at 248. The Court must find, therefore, that Plaintiff

has failed to establish a prima facie case of racial discrimination. The Court will nevertheless continue its analysis, and addresses Altercare's legitimate business reasons and lack of pretext for Plaintiff's termination below.

### C. Legitimate Business Reason for Termination

If a prima facie case for racial discriminatory treatment has been established, the burden shifts to the defendant to provide a "legitimate, non-discriminatory" reason for its actions. *Scott v. Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (quoting *McDonnell,* 411 U.S. at 802). Plaintiff claims she received disparate treatment compared with the two other nurses who were also involved in the April 8, 2010, incident and were not similarly disciplined for failing to assist the male resident with his call light. Defendant insists that it did not suspend and terminate Plaintiff because of her leaving a call light on. Rather, she was terminated because "an investigation – commenced after she complained that others were not answering call lights – revealed that she had engaged in highly inappropriate, and potentially abusive, treatment of one of Altercare's residents." Def.'s Reply, p.3.

At oral argument, it became even clearer that Defendants' reasons for terminating Plaintiff were varied, and included a number of legitimate bases completely unrelated to the April 8, 2010, incident. In addition to the Plaintiff's own written statements regarding the incident between her and the male employee, Defendant provides the statements of six additional employee witnesses in support of its legitimate basis for termination. Eibling Affidavit, Exh. A - H. Sarah Eibling, Administrator of Altercare, in making her decision to terminate Plaintiff, claims she relied on the reports of Plaintiff's behavior contained in these statements, along with the rest of the investigation conducted by Defendant at Plaintiff's request. *Id.* at ¶ 7, 10-15. The statements are not all negative, but among the claims against Plaintiff are that she refused to

assist the male resident (*Id.*, Exh. D), threatened to kick the male resident out of the house (*Id.*, Exh. B), and that she raised her voice when speaking with the male resident (*Id.*, Exh. H). Defendant submits that any one of these reported behaviors is sufficient grounds for termination of an STNA at Altercare.

Plaintiff naturally denies ever treating any resident inappropriately in the manners described in some of the statements. Even when viewing the facts in Plaintiffs' favor, however, Defendant was still justified in relying on the reports in terminating her.  Whether the allegations are in fact true or not is not the issue.  The question is whether reliance on such reports constitutes a legitimate, nondiscriminatory basis for having terminated Plaintiff.  As recently stated in *Nemeth* case, "[i]t is insufficient to simply show that the employer's decision was wrong or mistaken, because the factual dispute is whether discriminatory animus motivated the employer not whether the employer is 'wise, shrewd, prudent, or competent.'" *Nemeth*, 2011 U.S. Dist. LEXIS 68122 at *27 (citations omitted).

As Defendant argues, the reported behaviors leading to Plaintiffs' termination had nothing to do necessarily with failing to respond to the male resident's call light on the day of the April 8, 2010 incident. That is to say, none of the alleged conduct discussed above overlaps with what the two allegedly similarly-situated nurses present during the April 8, 2010, incident did. According to Plaintiff, they merely did nothing when they should have assisted.  While Plaintiff alleges that her conduct with the male resident was not inappropriate, it is Plaintiff's burden to establish that her behavior and the other employees' conduct was of "comparable seriousness." *See Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 730 (6th Cir.1999).  Plaintiff has failed to make this showing.

Therefore, Plaintiff has not provided any evidence to show that a genuine material dispute of fact exists regarding Defendant's articulated legitimate, nondiscriminatory reason for terminating her.

### D. Pretext

Defendant has met its burden for establishing a legitimate, nondiscriminatory reason for firing Ms. Peacock. Therefore, under the *McDonnell* framework, Defendants will prevail unless Plaintiff can provide sufficient evidence that Defendant's articulated nondiscriminatory basis for termination is pretextual. *See Anderson*, 477 U.S. at 248; *Nemeth*, 2011 U.S. Dist. LEXIS 68122 at *26 ("Despite Defendant's non-discriminatory reason for initiating the Investigation, suspending, and ultimately terminating Plaintiff, she can still successfully recover on her discrimination claims if she can demonstrate that Defendant's reasons were merely a pretext.") (citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

> A plaintiff may demonstrate that an employer's proffered legitimate reason for an adverse employment action is pretextual on any of three grounds: 1) by showing that the reason has no basis in fact; 2) by showing that the reason did not actually motivate the employer's action; or 3) by showing that the reason was insufficient to motivate the action.

*Macy*, 29 F.3d at 1084; *see also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Plaintiff does not expressly articulate an argument for pretext in her Opposition to Defendant's motion. Indeed, Plaintiff does not present any evidence to suggest that the sorts of behaviors listed in Sarah Eibling's Affidavit would not constitute grounds for termination at Altercare, and "where the nonmoving party fails to respond to the motion for summary judgment, the trial court is under no obligation to search the record to establish an absence of a genuine issue of material fact." *Blackwell v. Prod. Action Int'l, Inc.*, Case No. 04-231-KSF, 2006

U.S. Dist. LEXIS 92027 at *26 (E.D. KY 2006) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)).

Plaintiff does deny ever speaking abusively to the male resident, or ever telling him he would be kicked out, which supports the threshold basis for demonstrating pretext (lack of factual basis for express reason for termination).  Attacking the veracity of the other employees' substantive claims, however, does not implicate the veracity of the basis upon which Altercare relied.  *See Nemeth*, 2011 U.S. Dist. LEXIS 68122 at *27.  The reason for termination stated by Altercare has a basis in fact—the investigation and statements it solicited—and Plaintiff has not undermined that basis.

Nor has Plaintiff presented any evidence suggesting that Defendant relied on another basis for firing her, other than her repeated, but unfounded, allegations that the Defendant's actions were racially motivated.  Finally, Plaintiff does not argue, or provide evidence showing that relying on such reports of improper behavior is an insufficient basis for terminating an employee at Altercare.  Altercare attached its employee performance standards for STNAs, and they require that STNAs, *inter alia*, "provide support in hygiene, grooming, toileting, mobility, and eating," (Eibling Aff., Ech. I, p.1), have "patience and tact in dealing with residents," (*id.*, at 2), "work cooperatively with residents," (*id.,* at 3), and "control angry feelings appropriately" (*id.*, at 4).

Plaintiff also claims, in her attached written statements, that she had a "clear record" and that Defendant bypassed the normal steps for termination required by the company's policies.  An employee's view of her own satisfactory performance, however, cannot establish pretext where the employer reasonably relied on specific facts before it indicating that the employee's performance was poor.  *See Majewski v. Automatic Data Processing, Inc*., 274 F.3d 1106, 1116-

17 (6th Cir. 2001).  Additionally, Plaintiff provides no evidence of the alleged company policy that Defendant did not follow before terminating her.

Defendant has presented evidence, in the form of a sworn affidavit from the administrator who terminated her and the actual employees' statements she relied upon, that Ms. Peacock was terminated because of the negative reports of her behavior it received upon investigating the incident of April 8, 2010.  Plaintiff's own evaluation of her performance, alone, does not refute the basis for Altercare's evaluation and judgment of her poor performance on the particularized facts before it.  Therefore, Plaintiff cannot show that Altercare's legitimate, nondiscriminatory reason for her suspension and termination were pretextual, and this Court must grant Altercare's motion for summary judgment on Plaintiffs' racial discrimination claims.  *See Bacon v. Honda of Am. Mfg., Inc.*, 192 F. App'x. 337, 346 (6th Cir. 2006) (unpublished opinion).

## V. CONCLUSION

In sum, taking the facts in the light most favorable to Plaintiff, she has failed to submit any direct evidence of racial discrimination by Defendant, failed to establish the elements for a prima facie case of inferential discrimination, and failed to rebut Defendant's legitimate, nondiscriminatory reason for terminating her employment.  For the reasons set forth herein, Defendant's Motion for Summary Judgment is hereby **GRANTED**, and Plaintiff's remaining claims in this case are, accordingly, **DISMISSED**.

**IT IS SO ORDERED.**

                     s/Algenon L. Marbley
                     **Algenon L. Marbley**

**DATED: October 26, 2011**